**Affirmed and Opinion filed October 12, 2023.**



In The

# Fourteenth Court of Appeals

### NO. 14-22-00708-CV

## RANDY BRAST AND RYAN BRAST, Appellants

## V.

## DAVID BRAST, JANET BRAST, AND MATTHEW BRAST, Appellees

**On Appeal from the County Court at Law**
**Austin County, Texas**
**Trial Court Cause No. 22CV-6299**

## OPINION

Appellants Randy Brast ("Randy") and Ryan Brast ("Ryan") appeal a protective order entered in favor of appellees David Brast ("David"), Janet Brast ("Janet"), and Matthew Brast ("Matthew"). In two issues, Randy and Ryan argue that (1) the trial court's finding of family violence was erroneous because the actions were justified under Texas Penal Code § 9.41(b) and (2) Texas Family Code § 85.022(b)(6)'s prohibition of the possession of firearms is unconstitutional both facially and as applied to Randy and Ryan. We affirm.

# I.  BACKGROUND

David and Randy are brothers and neighbors, and Ryan is Randy's son. David and his wife, Janet, and on behalf of their son Matthew, sought a protective order from Randy and Ryan for a minimum of two years, arguing that they were in grave fear of serious bodily injury.[1] Appellees asked that the trial court prohibit Randy and Ryan from possessing a firearm during the term of the protective order.

At a hearing on appellees' motion for a protective order, the trial court heard testimony from David, Janet, Ryan, and Ryan's friend Grayson Moody ("Moody") about an altercation that arose over a dog on March 27, 2022. The dog, which Randy said was a stray and then Ryan claimed belonged to them, wandered onto David's property. David said that he was going to shoot it or haul it off before picking the dog up and taking it inside his home. When Randy and Ryan trespassed onto David's property to retrieve the dog, the men "got into a scuffle." David testified that Randy and Ryan hit him. Randy and Ryan claimed that they were defending their property when they trespassed onto David's property to retrieve the dog.

For the next four days, Randy and Ryan fired firearms outside of their property and adjacent to David's property, including after midnight. David testified that on the third day, one of the men drove his truck to the side of the property line with David, rolled down his window, and fired gunshots into the ground while facing in David's direction. Finally, David testified that he feared for his life and he feared Randy and Ryan will "come in [and] kill me one night or one evening—me and my family." Janet also testified that she feared for her and her family's life during the events of March 27 and in the future.

---

[1] The record only includes appellees' application for an ex parte protective order and does not contain appellees' application for a protective order. Appellees' counsel noted the existence of a pleading requesting a protective order filed June 7, 2022.

Grayson testified about the scuffle and about ownership of the dog that led to the incident, confirming that he had given the dog as a puppy to Randy's daughter. When Ryan testified, he denied striking his uncle David, threatening David or his son, or later discharging a firearm in the middle of the night. Instead, he claimed that on March 27 he was only retrieving his family dog after David threatened repeatedly to shoot it.

On July 8, 2022, the trial court entered two protective orders for a term of one year against Randy and Ryan, protecting David, Janet, and Matthew from Randy and Ryan and prohibiting Randy and Ryan from possessing firearms or ammunition. Randy and Ryan filed a motion for new trial arguing that they did not commit family violence because they were defending their property and that the prohibition on their ability to possess firearms and ammunition was unconstitutional and violated their Second Amendment rights. The trial court denied the motion. This appeal followed.

## II.   MOOTNESS

We first address the issue of mootness, which we raise sua sponte. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004) (per curiam) ("[W]e are obligated to review *sua sponte* issues affecting jurisdiction."). The protective orders here expired on July 8, 2023.

Generally, mootness defeats a court's subject-matter jurisdiction over a particular controversy. *See Messier v. Messier*, 458 S.W.3d 155, 161 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Robinson v. Alief Indep. Sch. Dist.*, 298 S.W.3d 321, 324 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("The mootness doctrine precludes a court from rendering an advisory opinion in a case where there is no live controversy."); *Thompson v. Ricardo*, 269 S.W.3d 100, 103 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("[I]f a judgment cannot have a practical effect on an existing controversy, the case is moot and any opinion issued on the merits in

3

the appeal would constitute an impermissible advisory opinion."). A case becomes moot when the issues presented are no longer "live"—that is, a justiciable controversy no longer exists between the parties or the parties no longer have a legally cognizable interest in the case's outcome. *Glassdoor, Inc. v. Andra Grp., LP*, 575 S.W.3d 523, 527 (Tex. 2019); *see In re Guardianship of Fairley*, 650 S.W.3d 372, 379 (Tex. 2022). But a case is not made moot merely because some issues became moot during the appeal; that is, if only some claims or issues become moot, the case remains live for the claims or issues that are not moot. *State ex rel. Best v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018).

There are two exceptions to the mootness doctrine: (1) the capable of repetition yet escaping review exception and (2) the collateral consequences exception. *Fed. Deposit Ins. Corp. v. Nueces County*, 886 S.W.2d 766, 767 (Tex. 1994) (citing *Gen. Land Off. of State of Tex. v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 571 (Tex. 1990)). We have previously concluded that the collateral consequences exception applies to the findings necessary to enter a protective order based on family violence. *Dolgener v. Dolgener*, 651 S.W.3d 242, 254–55 (Tex. App.—Houston [14th Dist.] 2021, no pet.) ("[U]nder the collateral-consequences exception, an expired protective order based on a finding of family violence is reviewable because the 'effects of a protective order carry significant collateral legal repercussions. . . .'"); *see* Tex. Fam. Code Ann. § 153.004(f) (mandating that a trial court must consider the issuance of protective order under Chapter 85, Title 4 of the Family Code in determining child custody); *Martin*, 545 S.W.3d at 167; *see also In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019) (per curiam). Thus, we conclude that appellants' first issue challenging the finding of family violence needed for a protective order under the family code is excepted from the mootness doctrine. *See Dolgener*, 651 S.W.3d at 254–55.

Appellants' second issue concerns an expired prohibition on their ability to possess firearms included in the protective order. This prohibition is a discretionary condition that the trial court may include in a protective order when it has found that family violence has occurred and is likely to occur in the future.[2] *See* Tex. Fam. Code Ann. §§ 85.001, 85.022(b)(6). However, the existence of this expired prohibition does not carry significant collateral legal repercussions. *Cf. Dolgener*, 651 S.W.3d at 254–55. Thus, we must consider whether this prohibition on the possession of firearms is subject to the second exception—that is, that it is capable of repetition yet would escape judicial review. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) ("[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality."); *Tex. A&M Univ.-Kingsville v. Yarbrough*, 347 S.W.3d 289, 290–91 (Tex. 2011) ("'Capable of repetition yet evading review' is a rare exception to the mootness doctrine." (quoting *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001))).

This exception has two requirements: (1) that the challenged action was too short to be fully litigated before the action ceased or expired[3] and (2) that a reasonable expectation exists that the same party will be subjected to the same action again. *Pressley v. Casar*, 567 S.W.3d 327, 331 (Tex. 2019) (citing *Williams*, 52 S.W.3d at 184). We focus our attention on the second requirement.

---

[2] Effective September 1, 2023, the Legislature amended Texas Family Code § 85.001 to remove the requirement that the trial court find family violence is likely to occur in the future, in addition to a finding that family violence has occurred, in order to enter a protective order. Act of May 24, 2023 88th Leg., R.S., ch. 688 §§ 1, 2. The citations in this opinion refer to the prior version of the statute.

[3] We note that a protective order under Chapter 85 of the Texas Family Code is generally for a duration no longer than two years. *See* Tex. Fam. Code Ann. § 85.025. If certain findings are made, then a trial court may enter a protective order for a term longer than two years that is "sufficient to protect the applicant." *See id.* § 85.025(a-1).

Here, there is nothing in the record supporting a conclusion that there is a reasonable expectation that Randy and Ryan will be subjected to the same prohibition from possessing firearms. *See Yarbrough*, 347 S.W.3d at 291 ("Nor is there evidence that Yarbrough will receive subsequent negative evaluations that she may wish to grieve."); *Williams*, 52 S.W.3d at 184–85 (holding that inmates did not satisfy the capable-of-repetition requirement because "[w]hether and when [they] may be charged with a crime that would lead to their incarceration . . . is speculative"); *cf. Blum v. Lanier*, 997 S.W.3d 259, 264 (Tex. 1999) ("If the trial court orders a new charter amendment election, as it has indicated it will, Blum or any other signatory to the petition may seek to enjoy the City from the proceeding with a ballot proposition that allegedly misleads the electorate about this proposed amendment."); *In re Cornyn*, 27 S.W.3d 327, 332 (Tex. App.—Houston [1st Dist.] 2000, orig. proceeding) (noting that relators would face similar orders in the immediate future because the trial court "had scheduled another contempt hearing and a temporary-injunction hearing that were actively pursued until our stay issued"); *see also In re Uresti*, 377 S.W.3d 696, 696–97 (Tex. 2012) (orig. proceeding) (per curiam) ("But Uresti has not shown a reasonable expectation that he will be subjected to the same action again."). Thus, we conclude that appellant's second issue is moot.

### III.    FINDING OF FAMILY VIOLENCE

In their first issue, Randy and Ryan argue that the trial court's finding of family violence was erroneous because the actions were justified under Texas Penal Code § 9.41(b), concerning actions taken in the defense of property.[4]

---

[4] Section 9.41 subsection (b) sates:

A person unlawfully dispossessed of land or tangible, movable property by another is justified in using force against the other when and to the degree the actor

6

"Family violence" necessary for a protective order under the Family Code is defined as:

> (1) an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault or sexual assault, *but does not include defensive measures to protect oneself*;
>
> (2) abuse, as that term is defined by [§] 261.001(1)(C), (E), (G), (H), (I), (J), (K), and (M), by a member of a family or household toward a child of the family or household; or
>
> (3) dating violence, as that term is defined by [§] 71.0021.

Tex. Fam. Code Ann. § 71.004 (emphasis added); *see Boyd v. Palmore*, 425 S.W.3d 425, 430 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see also* Tex. Fam. Code Ann. §§ 71.003 (defining "family"), 71.005 (defining "household").

Generally, we review the trial court's finding in a protective order proceeding that family violence has occurred and is likely to occur in the future for legal and factual sufficiency. *Fontenot v. Fontenot*, 667 S.W.3d 894, 914 (Tex. App.—Houston [14th Dist.] 2023, no pet.); *Dolgener*, 651 S.W.3d at 256. Randy and Ryan, however, do not specifically challenge the sufficiency of the trial court's findings nor do they present the applicable standard of review. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made,

---

reasonably believes the force is immediately necessary to reenter the land or recover the property if the actor uses the force immediately or in fresh pursuit after the dispossession and:

> (1) the actor reasonably believes the other had no claim of right when he dispossessed the actor; or
>
> (2) the other accomplished the dispossession by using force, threat, or fraud against the actor.

Tex. Penal Code Ann. § 9.41(b).

with appropriate citations to authorities and to the record."). Rather, Randy and Ryan argue that their actions "should not be deemed to be family violence because their violence on March 27, 2022[,] was authorized as defense of property" under Texas Penal Code § 9.41(b). Whether acts in the defense of property can be "family violence" for purposes of a protective order under the Texas Family Code is a question of first impression.

We review questions of statutory interpretation de novo. *Pedernal Energy, LLC. v. Bruington Eng'g, Ltd.*, 536 S.W.3d 487, 491 (Tex. 2017); *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). Our primary objective in construing statutes is to give effect to the Legislature's intent. *Molinet*, 356 S.W.3d at 411. The plain meaning of the text is the best expression of legislative intent. *Id.*

We read statutes contextually to give effect to every word, clause, and sentence because every word or phrase is presumed to have been intentionally used with a meaning and a purpose. *Rodriguez*, 547 S.W.3d at 838; *see Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam) ("We presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted."). We use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired. *See* Tex. Gov't Code Ann. § 311.011(b); *Rodriguez*, 547 S.W.3d at 838; *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008).

The plain language of the statute provides that acts in self defense are not family violence, but it contains no similar provision concerning the defense of property. *See* Tex. Fam. Code Ann. § 71.004(1); *Lippincott*, 462 S.W.3d at 509. Thus, we conclude that actions in the defense of property do not preclude a finding of family violence as necessary for a protective order under the Family Code and reject appellants' argument. *See* Tex. Fam. Code Ann. §§ 71.004(1), 81.001;

8

85.001(a); *Lippincott*, 462 S.W.3d at 509; *Molinet*, 356 S.W.3d at 411.

We overrule appellants' first issue.

## IV.  CONCLUSION

The trial court's order is affirmed.


/s/    Margaret "Meg" Poissant
Justice


Panel consists of Justices Bourliot, Hassan, and Poissant.