In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-22-00202-CV
_____

IN THE INTEREST OF C.B.W. & C.B.W.

On Appeal from the 418th District Court
Montgomery County, Texas
Trial Cause No. 18-06-08110-CV

MEMORANDUM OPINION

In this appeal, one of C.B.W.'s parents, *Frank*, argues in one issue

that the trial court erred when, in April 2022, it granted *Mother's* Petition

to Modify Parent-Child Relationship with C.B.W., a child we will refer to

as *David*.[1] According to Frank, despite a finding in an "Agreed Final

_____

[1]We have used pseudonyms for the names of the children and all adults referred to in the opinion to avoid confusion. *See* Tex. Fam. Code Ann. § 109.002(d) (authorizing appellate courts in Title 5 appeals to identify the parties by fictitious names or by their initials). Mother and Frank also have a daughter, and their daughter shares David's initials. Frank's and Mother's daughter, whom we will call *Demi*, is also named in trial court's order granting Mother's Petition to Modify Parent-Child Relationship with Frank. Frank doesn't challenge the validity of the trial

1

Decree of Divorce" (the Agreed Decree)—which was signed by the 418th District Court of Montgomery County, Texas in December 2018, and that states that he is David's parent—the Agreed Decree as to David is void because the Chancery Court in Mississippi made a child custody determination naming *Stan* as David's father in 2008, giving Stan the right to custody, possession, and access to David under Mississippi's version of the Uniform Child Custody Jurisdiction and Enforcement Act (the UCCJEA).[2]

On appeal, Frank argues that during the hearing conducted in the 418th District Court on Mother's Petition to Modify Parent-Child Relationship (Motion to Modify the Agreed Decree), Mother failed to meet her burden to prove that the Mississippi Chancery Court lost its exclusive continuing jurisdiction over David's child custody determination, a case decided in 20018 in which that court awarded joint custody of David to Mother and *Stan*, David's father. In 2008 and after Mother and Stan divorced, Frank and Mother married. In 2018, the 418th District Court

---

court's order to the extent it modifies the requirements of the custodial provisions in the Agreed Decree of Divorce tied to his daughter, *Demi*.

[2]*See* Miss. Code Ann. §§ 93-27-101 — 93-27-402 (Lexis Advance through February 30, 2024). In Texas, the UCCJEA is codified in Chapter 152 of the Family Code. *See* Tex. Fam. Code Ann. §§ 152.002-.317 (Supp).

2

of Montgomery County, Texas signed Mother's and Frank's Agreed Decree, an agreement they reached after signing an irrevocable mediated settlement agreement. According to Frank, because the record fails to show that the 418th District Court conducted the jurisdictional analysis required to show that the 418th District Court acquired subject-matter jurisdiction over David's case, both the Agreed Decree and Order modifying the terms of David's parent-child relationship should be declared void. Frank concludes that because the evidence does not show the 418th District Court acquired subject-matter jurisdiction to make an initial custody determination in David's case or to modify the Mississippi Chancery Court's determination before the 418th District signed the Agreed Decree, that court could not have created a valid parent-child relationship adjudicating him as David's parent, could not have created a duty that required him to support David financially, or could not have acquired the jurisdiction necessary to have awarded him rights of custody, access, or possession to David.[3]

---

[3]*Compare* Tex. Fam. Code Ann. § 152.202 (Exclusive Continuing Jurisdiction) and *id.* § 152.203 (Jurisdiction to Modify Determination), *with* Miss. Code Ann. § 93-27-202 (Exclusive Continuing Jurisdiction) and 93-207-203 (Jurisdiction to Modify Determination).

Mother didn't file a brief in response to Father's appeal. We overrule Frank's issue. First, we conclude the record doesn't support Frank's argument that Mother didn't meet her burden of proof. Instead, the record shows that when Mother and Frank divorced in December 2018, the trial court found that "after receiving evidence, . . . it has jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date the suit was filed." Thus, even were we to assume that Mississippi remained David's home state as of the date Mother and Frank divorced in 2018, the finding in the Agreed Decree constitutes some evidence that the 418th District Court either complied with the provisions in Texas Family Code sections 152.201 or 152.202 before signing the Agreed Decree, that the trial court determined that one of the exceptions in section 152.203 to the continuing exclusive jurisdiction requirements of UCCJEA existed before it signed the Agreed Decree, or that before the 418th District granted the divorce, the court in Mississippi determined that it was an inconvenient forum in which to

4

proceed in David's case under one of the provisions in Mississippi Code section 93-27-207.[4]

Second, we note that Frank's signature is on the Agreed Decree. "A party cannot complain on appeal that the trial court took a specific action that the complaining party requested, a doctrine commonly referred to as the invited error doctrine."[5] Simply put, Frank asked the 418th District Court to grant his divorce on the terms in the Agreed Decree, and in the Agreed Decree he agreed to pay $1,200 in child support toward the support of two children regardless of whether they were his. He also made that obligation a contractual obligation under the Agreed Decree. When the 418th District Court modified the Agreed Decree in 2022, it didn't increase the terms of any of the financial obligations Frank made to Mother in 2018 in the Agreed Decree, the court simply enforced the agreement that Frank made. Finally, to the extent Frank complains about the Order modifying the custodial requirements of the Agreed

---

[4]Tex. Fam. Code Ann. §§ 152.201-.203; Miss. Code Ann. § 93-27-207.

[5]*Tittizer v. Union Gas Corp.*, 171 S.W.3d 856, 862 (Tex. 2005) (cleaned up).

Decree, those requirements have all become moot because David became an adult in May 2023 when he turned eighteen.

## Background

Frank appeals from an order that the trial court signed following a trial to the bench. The order is titled "Order in Suit to Modify Parent-Child Relationship," but we will refer to it as the Order or the Order modifying the Agreed Decree. The Order addresses and modifies Mother's and Frank's custodial rights under an Agreed Decree that addressed Mother's and Frank's duties, obligations, and their rights to two children, David (born in 2005) and Demi (born in 2010).

The trial court conducted the hearing on Mother's motion to modify the Agreed Decree in February 2022. Following the hearing, Frank asked the trial court to provide the parties with written findings of fact and conclusions of law. In its written findings, the trial court found that David's and Demi's circumstances had substantially changed since Mother and Frank divorced in December 2018. The trial court also modified the Agreed Decree by granting Mother exclusive rights regarding David's and Demi's custody. The Order gave Mother the exclusive right (a) to consent to David's and Demi's medical, dental and

6

surgical treatment, should their treatment involve an invasive procedure; (b) to consent to their psychiatric and psychological treatment; (c) to make decisions concerning their educations; and (d) to apply for, renew, and maintain possession of their passports. Under the Order, Frank and Mother were required to communicate through a computer system the trial court called Our Family Wizard when communicating with each other about David's and Demi's school, extracurricular activities, medical, dental, psychological, and psychiatric needs. The Order also permanently enjoined Frank and Mother from disparaging one another's family members, from making derogatory remarks or belittling the children, from using corporal punishment as a form of discipline, from hiding or secreting David or Demi from each other, from using illegal drugs or medications without a valid prescription within twelve hours before or during their periods of possession, and from blocking the opposing party's cell phone number from their phone. The Order also modified when Frank was allowed to communicate electronically with David and Demi, authorizing those communications to occur electronically on Mondays and Thursdays between 8:00 and 8:30

p.m. The changes described above were all based on an agreement the parties reached before the hearing.

The amount Frank was paying Mother in monthly child support was one of the main issues that the parties litigated during the hearing. Simply put, Mother wanted Frank to pay more in child support. Under the 2018 Agreed Decree, Frank had agreed to pay $1,200 per month for the joint support of both David and Demi until David turned eighteen, at which time the support would then be reduced to $1,120 per month for Demi's support alone.[6] After the hearing, The Order the trial court signed modifying the Agreed Decree didn't increase Frank's support obligation above the $1,200 per month, the amount he had been paying under the Agreed Decree. The Order also didn't extend the $1,200 payment term beyond David's eighteenth birthday. To be sure, the Order confirmed an arrearage that Frank owed under the Agreed Decree of $1,741.[7] The Order also requires Frank to pay the arrearage in $100 monthly

---

[6]There are additional conditions in the Agreed Decree tied to Frank's support obligation that could have resulted in his child support obligation ending earlier, but none of them are relevant to the appeal.

[7]For simplicity, we have rounded all monetary figures to whole numbers.

installments until the arrearage (with interest at 6% per year) is paid in full.

Except as described above, the trial court denied Mother's requests for any additional relief. Although the appellate record includes a few documents in the Clerk's Record from Mother's and Frank's divorce—the Original Petition For Divorce, Frank's answer, the Mediated Settlement Agreement, the Agreed Final Decree of Divorce, and some Qualified Domestic Relations Orders—it doesn't include the information mentioned in the Agreed Decree, specifically "the record of testimony" that the trial court noted "was duly reported by the Court reporter for [the] 418th Judicial District Court." Additionally, the docket sheet in the Clerk's Record includes docket entries relevant to the proceedings in Mother's and Frank's divorce. The docket entry on the day the trial court conducted the final hearing in Mother's and Frank's divorce states: "UCCJEA affidavits filed; agreed final decree of divorce granted and signed[.]" The Clerk's Record in the appeal that Frank filed doesn't include the UCCJEA affidavits that are referenced in the docket sheet.

Based on the positions the parties took in the hearing that occurred in the trial court in February 2022, most of the remaining facts that we

9

need to resolve Frank's appeal are undisputed. For instance, in the February 2022 hearing, the parties didn't dispute that (1) Mother was married to Stan before marrying Frank; (2) Mother and Stan divorced in March 2008; and (3) Mother married Frank after Mother and Stan divorced. At the beginning of the hearing, Mother and Frank stipulated that David isn't Frank's child. That said, Frank never denied signing the Agreed Final Decree of Divorce, he never claimed that he didn't sign the UCCJEA affidavit that is referred to in the docket sheet (which isn't in the record before us in the appeal), and he never argued that the Agreed Decree (which he signed) isn't enforceable as a contract.

There was also no dispute that when he and Mother married in 2008, he knew that he wasn't David's father. During the February 2022 hearing, Frank's attorney introduced an exhibit that shows that in 2013, David's Mother and Stan obtained a court order in Mississippi changing David's last name so that his last name would be same as Frank's. The exhibit was admitted into evidence without objection. Finally, during the hearing, Frank established that Stan (David's biological father) died in September 2020.

As for the Chancery Court's judgment, we agree that it establishes as a matter of law that the Chancery Court in Mississippi made the initial custody determination in 2008 naming Stan as David's father when Mother and Stan divorced. A Final Judgment and Property Settlement from Mother's and Stan's 2008 divorce was admitted into evidence without objection during the November 2022 hearing. Both the Final Judgment granting the divorce and the Property Settlement name Stan and Mother as David's parents. They also both state that David was "born to this union." The Mississippi Court's 2008 Judgment gave Mother and Stan joint "legal custody of [David] with [Mother] having primary physical custody."[8]

Turning to the pleadings, we note that the pleadings on file before the November 2022 hearing don't show that Frank ever filed a pleading alleging that he was not David's parent. And after examining the testimony the trial court heard in the hearing that it conducted in November 2022, we note that no one ever asked Frank whether, after he

---

[8]The proceeding in Mississippi was in the Chancery Court of the First Judicial District of Hinds County, Mississippi, Cause number 2005-1166 W/4.

11

and Mother married in 2008, if he'd adopted David or if Stan had ever signed a document relinquishing his parental rights.

At the beginning of the February 2022 hearing, the trial court noted that in response to Mother's motion to modify the Agreed Decree, Frank had not filed pleadings contesting Mother's allegation or the statement in the Agreed Decree that he is David's "parent." When Frank's attorney brought up his theory during the hearing for the first time that the trial court lacked subject-matter jurisdiction over Mother's request to modify the custodial provision in the Agreed Decree because Mother hadn't shown the Mississippi Chancery's Court no longer possessed exclusive continuing jurisdiction over David's case, the trial court noted that it viewed its role as limited to

> modifying the order that is in place. That order has two children of the marriage, so I'm taking that into account. You're not challenging any of the paternity that was found underneath that order. I have no pleadings to challenge that.

After the trial court signed the Order modifying the Agreed Decree, Frank filed a Motion for Partial New Trial. In his Motion, Frank asked the trial court to grant a new trial as to the parts of the order that applied to David but not those applicable to Demi. In that same motion, Frank argued that as to David, the trial court didn't have subject-matter

12

jurisdiction over the case for the reasons already discussed. Frank's motion was overruled by operation of law. In June 2022, Frank filed a timely notice of appeal. Eleven months later, in May 2023, David turned eighteen.

## Standard of Review

On appeal, Frank raises one issue claiming the 418th District Court of Montgomery County, Texas lacked subject-matter jurisdiction to adjudicate any issues addressing David's parent-child relationship because Mother failed to meet her burden to show the Chancery Court in Mississippi no longer had exclusive continuing jurisdiction over the issues of David's custody, possession and access. Frank concludes that because the record doesn't show the trial court had subject-matter jurisdiction of those issues when, in 2018, it signed the Agreed Decree or when, in 2022, it signed the Order modifying the custody provisions in the Agreed Decree, both the Agreed Decree and the Order modifying the Agreed Decree are void.

Whether a court has subject-matter jurisdiction is a question of law that we review de novo.[9] "[S]ubject-matter jurisdiction is essential to a court's authority to decide a case."[10] "[A] court cannot render a binding judgment concerning matters over which it lacks subject-matter jurisdiction."[11] Thus, a judgment rendered by a court acting without subject-matter jurisdiction is vulnerable to collateral attack on the basis that it is void.[12]

A question of statutory construction presents a question of law that we review on appeal using a de novo standard.[13] When construing a statute, "our objective is to determine and give effect to the Legislature's intent."[14] We start with the plain and common meaning of the statute's

---

[9]*See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

[10]*Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553 (Tex. 2000).

[11]*In re City of Dallas*, 501 S.W.3d 71, 73 (Tex. 2016) (orig. proceeding) (per curiam).

[12]*In re D.S.*, 602 S.W.3d 504, 520 (Tex. 2020) (noting that "a judgment rendered without subject-matter jurisdiction is void and thus subject to collateral attack").

[13]*Id.* at 514.

[14]*In re D.T.*, 625 S.W.3d 62, 71 (Tex. 2021).

words.[15] "If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the statute."[16]

The UCCJEA, codified as Chapter 152 of the Texas Family Code, governs child custody issues between Texas, Mississippi, and other states that have adopted the UCCJEA.[17] "The UCCJEA . . . helps ensure custody determinations are rendered in the State which can best decide the case in the interest of the child."[18] The UCCJEA "encourages national uniformity in child custody disputes and addresses the increasing mobility of American families."[19]

While district courts in Texas have general jurisdiction over child-custody matters, sections 152.203 and 152.207 of the Texas Family Code provide several circumstances under which a court in Texas may proceed to modify an initial child-custody determination made by a court in

---

[15]*See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006).

[16]*See D.T.*, 625 S.W.3d at 71.

[17]*Compare* Tex. Fam. Code Ann. §§ 152.001-.317 (Uniform Child Custody Jurisdiction and Enforcement Act), *with* Miss. Code Ann. §§ 93-27-101—93-27-402 (Uniform Child Custody Jurisdiction and Enforcement Act).

[18]*In re D.S.*, 602 S.W.3d at 513 (cleaned up).

[19]*In re Dean*, 393 S.W.3d 741, 743 (Tex. 2012).

another state.[20] In 2020, the Texas Supreme Court noted that "some refer to the UCCJEA as a subject-matter-jurisdiction statute, while others do not. The issue is not settled."[21] Yet in that case, our Supreme Court declined to resolve the issue, holding that father's collateral attack of an order terminating his parental rights was barred by the plain language of Family Code section 162.211(c), a statute that prohibits "a direct or collateral attack on an order terminating parental rights based on an unrevoked affidavit of relinquishment[.]"[22]

Section 152.201(a) of the UCCJEA is the exclusive jurisdictional basis for a court to make a *child custody determination*.[23] Under Chapter 152, a *child custody determination* is "a judgment, decree, or other order of a court providing for legal custody, physical custody, or visitation with respect to a child," and the term "includes permanent, temporary, initial, and modification orders." Even so, a *child custody determination* doesn't

---

[20]Tex. Fam. Code Ann. §§ 152.203 (Jurisdiction to Modify Determination), 152.207 (Inconvenient Forum).

[21]*In re D.S.*, 602 S.W.3d at 517.

[22]*Id.* at 518 (citing the plain language of Tex. Fam. Code Ann. § 161.211(c)).

[23]*See* Tex. Fam. Code Ann. § 152.201(b); *D.S.*, 602 S.W.3d at 513.

include "an order relating to child support or other monetary obligations."[24]

As defined by statute, an *initial determination* means "the first child custody determination concerning a particular child."[25] The record shows that as to David, the Chancery Court in Mississippi made an initial *child custody determination* as to David in 2008. Under Mississippi Code Section 93-27-202 of the UCCJEA, the Mississippi Chancery Court in Hinds County as of 2008 had exclusive continuing jurisdiction over child-custody disputes involving David subject to other provisions in the UCCJEA authorizing courts of other states to modify an initial custody determination or to modify a custody determination made by a court of another state.[26] Stated another way, the UCCJEA provides how the court in the initial state where the child custody determination was made may lose its original exclusive continuing jurisdiction over the issues of custody, access, and possession of the child or choose not to exercise its jurisdiction and defer to the forum of another state.[27]

---

[24]Tex. Fam. Code Ann. § 152.102(3).
[25]*Id*. § 152.102(8).
[26]*See* Miss. Code Ann. § 93-27-202; Tex. Fam. Code Ann. §§ 152.203, 152.207.
[27]*See* Tex. Fam. Code Ann. §§ 152.202, 152.203, 152.207.

Analysis

Frank argues that in the November 2022 hearing, Mother failed to meet her burden of proof to establish that the judge of the 418th District Court had subject-matter jurisdiction over the initial child custody determination that was made by that same court in 2018 when Frank and Mother divorced, and failed to meet her burden of proof in the February 2022 hearing to demonstrate the trial court could exercise subject-matter jurisdiction over Mother's motion to modify the Agreed Decree, with respect to the provisions that apply to David. Because the trial court did not have subject-matter jurisdiction over the dispute, Frank argues, he has a right to have this Court reverse the trial court's Order and have that Order and the Agreed Decree declared void.

We turn first to Frank's complaint about the finding in the Agreed Decree in which the trial court found that Mother and Frank are David's and Demi's "parents." As to the finding of parentage, we conclude that it was Frank rather than Mother who failed to meet his burden of proving that the 418th District Court acted without subject-matter jurisdiction when, in 2018, the 418th District Court made or modified the custody

determination that was made first in David's case in 2008 by the Mississippi Chancery Court.

Before the hearing in February 2022 on Mother's Motion seeking to modify the Agreed Decree, Frank filed no pleadings that collaterally attacked the jurisdiction of the 418th District Court or that asserted he wasn't David's parent, despite the finding to the contrary in the Agreed Decree. When the trial court heard Mother's motion, Mother introduced a copy of the Agreed Decree, which was admitted into evidence without objection. As mentioned above, the Agreed Decree includes a finding that after receiving evidence, the trial court found it had jurisdiction of the case and the parties. Thus, the evidence Mother presented during the February 2022 hearing shows that before the trial court signed the Agreed Decree, it determined that based on the evidence it heard it had jurisdiction over the parties and the case. On appeal, Frank argues the 418th District Court didn't have jurisdiction over David's part of the case because the Chancery Court in Mississippi continued to retain exclusive continuing jurisdiction over David's case when, in 2018 and 2022, the 418th District Court signed the Agreed Decree and the Order modifying the Agreed Decree.

As with other final judgments that are regular on their face and that a party did not appeal, a final judgment in a case that arose from a divorce is not vulnerable to collateral attack if the trial court had jurisdiction over the parties and the subject matter of the suit.[28] Frank did not appeal from the judgment in the parties' divorce. He also did not file a bill of review. Because Frank did not file pleadings collaterally attacking the judgment before the trial court conducted the hearing on the Order modifying the Agreed Decree—the Order from which he filed this appeal—the relief he could have obtained from the trial court in the February 2022 hearing would at most have been a ruling denying Mother's request seeking to modify the Agreed Decree.[29]

On appeal, Frank attacks the jurisdictional finding in the Agreed Decree by pointing to the evidence he presented in the hearing the trial court conducted in February 2022. To be fair, Frank did argue in the hearing that the trial court didn't have jurisdiction as to David's part of the case to enforce the Agreed Decree because the Chancery Court in

---

[28] *Berry v. Berry*, 786 S.W.2d 672 (Tex. 1990).

[29] *Stoner v. Thompson*, 578 S.W.2d 679, 683 (noting that a "judgment must be based upon pleadings" and that unless an issue is tried by consent, a party may not sustain a favorable judgment on unpleaded claims).

Mississippi in 2008 had issued orders that constitute an initial custody determination under Mississippi's version of the UCCJEA. Yet the UCCJEA has exceptions that allow courts in other states to modify initial custody determinations made in another state or to make an initial custody determination when the child's parents do not presently reside in this state.[30] As mentioned before, Frank and Mother were never questioned about whether Stan relinquished his rights to David after he married Mother in 2018. And no one asked Mother or Frank whether David was ever adopted by Frank. Moreover, without pleadings collaterally attacking the Agreed Decree, the only question the trial court could have considered based on the evidence Frank introduced in the February 2022 hearing proving that the Chancery Court made an initial custody determination in David's case in 2008 was that the 2008 judgment evidenced an initial determination that a custody determination in another state in David's case had been made. Thus, given the UCCJEA provisions that allows for the initial court that has exclusive continuing jurisdiction to change, the fact that the Mississippi

---

[30]*See* Miss. Code Ann. §§ 93-27-202(1)(b), 93-27-203, 93-27-207; Tex. Fam. Code Ann. §§ 152.202(a)(2), 152.203, 152.207.

Chancery Court had exclusive jurisdiction in 2008 doesn't exclude the presumption created by the trial court's finding of jurisdiction in the Agreed Decree. That finding is based on evidence presented to the 418th District Court in 2018 that Frank failed to include in the record he filed to support his appeal. Without it, he cannot demonstrate that the 418th District Court violated any jurisdictional restrictions in the UCCJEA.[31]

For instance, after Frank introduced the Mississippi judgment, he failed to establish what evidence the 418th District Court heard in 2018 when he and Mother divorced when it determined that it had jurisdiction of the case and the parties. He didn't include the Reporter's Record from the 2018 hearing, so we don't know whether the trial court heard evidence that the Chancery Court in Mississippi held a hearing and complied with the procedures in the UCCJEA and found the 418th District Court would be a more appropriate forum in which to modify the initial custody determination that the Chancery Court made in 2008.[32]

To the extent Frank complains the parentage findings in the Agreed Decree are void, we hold that Frank failed to file pleadings collaterally

---

[31]*Id.*
[32]Miss. Code Ann. § 93-27-207.

attacking the parentage findings in the Agreed Decree. We also hold that Frank failed to meet his burden of proof in the hearing the trial court conducted in February 2022 to establish that the 418th District Court didn't have the jurisdiction it needed to sign the Order modifying the Agreed Decree when the trial court relied on the parentage finding in the 2018 Agreed Decree.

We turn next to Frank's argument that the trial court's order is void to the extent that it modifies the financial aspects of his obligations to David. We overrule this part of Franks argument, as we conclude the trial court had subject-matter jurisdiction to enforce the financial aspects of the Mediated Settlement Agreement the parties signed when they divorced.

The provisions of the UCCJEA in Mississippi and Texas provide courts in those states with exclusive continuing jurisdiction that have "made a child custody determination[.]"[33] By statutory definition under the versions of the UCCJEA in both states, a *child custody determination* "does not include an order relating to child support or another monetary

---

[33]Miss. Code Ann. § 93-27-202(1); Tex. Fam. Code Ann. § 152.202(a).

obligation of an individual."[34] Under the UCCJEA, the exclusive continuing jurisdiction provisions do not apply to the parts of the trial court's order addressing "an order relating to child support or other monetary obligation[s,]" so the UCCJEA doesn't apply to Frank's agreement to pay Mother $1,200 a month toward David's and Demi's support until David turned eighteen.

The other financial obligations Frank agreed to pay in the irrevocable Mediated Settlement Agreement on David's behalf, such as premiums for health insurance and half of David's out-of-pocket, unreimbursed, and uninsured medical costs, are other monetary obligations that Frank agreed to pay under the UCCJEA. Since other monetary obligations are not subject to the exclusive continuing jurisdiction provisions under the UCCJEA, the UCCJEA did not deprive the trial court of subject-matter jurisdiction over Mother's claim that Frank breached his agreement to pay child support and breached his agreement to pay David's medical expenses and insurance premiums under the terms of the Agreed Decree. As a district court, the 418th District Court has subject-matter jurisdiction over disputes that involve

---

[34]Miss. Code Ann. § 93-27-102(c); Tex. Fam. Code Ann. § 152.102(3).

an amount in controversy exceeding $500.[35] The amount in controversy

here exceeded that amount.

Last, we turn to Frank's argument that the trial court didn't have

subject-matter jurisdiction to sign an order awarding him any rights or

burdening him with any obligations over David's possession, custody, or

access because Mother didn't meet her burden to show the Chancery

Court in Mississippi lost its exclusive continuing jurisdiction over David's

case. As mentioned, David turned eighteen in May 2023. The trial court's

orders addressing Frank's duties and obligations of possession, custody,

and access as they relate to David expired under the trial court's order

when David turned eighteen. Because Frank is no longer subject to the

possession, custody, and access provisions in the Order modifying the

Decree, the possession, custody, and access provisions in the Order to the

extent it applies to David are moot.

The mootness doctrine is a constitutional limitation that prohibits

courts from issuing advisory opinions.[36] A controversy between parties

---

[35]Tex. Gov't Code Ann. § 24.007(b) (providing that "[a] district court has original jurisdiction of a civil matter in which the amount in controversy is more than $500, exclusive of interest")

[36]*Elec. Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 634 (Tex. 2021).

becomes moot "when events make it impossible for the court to grant the relief requested or otherwise affect the parties rights or interests."[37] A controversy may become moot at any time, including on appeal, and the court may sua sponte consider mootness.[38] If a case becomes moot, we must dismiss the case for lack of jurisdiction.[39]

When a child becomes an adult by turning eighteen, issues of conservatorship, possession, and access become moot.[40] Both the Texas and Mississippi versions of the UCCJEA define a child as "an individual

---

[37]*State ex rel. Best v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018) (cleaned up).

[38]*See Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001).

[39]*Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 162 (Tex. 2012).

[40]*In re Marriage of Comstock*, 639 S.W.3d 118, 127 (Tex. App.—Houston [1st Dist.] 2021, no pet.) ("A controversy can become moot at any time, including on appeal, and courts have an obligation to take into account intervening events that may render the controversy moot.") (cleaned up); *Overturf v. Garcia*, No. 03-18-00777-CV, 2019 Tex. App. LEXIS 10588, at *1 (Tex. App.—Austin Dec. 6, 2019, no pet.) (mem. op.) ("Because [the child] recently reached the age of majority, there is no longer a live controversy, rendering [the] appeal moot."); *In re D.S.H.*, No. 09-16-00109-CV, 2017 Tex. App. LEXIS 3525, at *14 (Tex. App.—Beaumont Apr. 20, 2017, no pet.) (finding that the Father's argument that the evidence was insufficient to support the jury's findings on the conservatorship issue became moot because the child, who was seventeen when the trial occurred turned eighteen before the case was decided on appeal).

who has not attained 18 years of age."[41] So to the extent Frank complains that the 418th District court exercised jurisdiction over issues that addressed David's possession, custody, and access, those complaints are moot.[42]

## Conclusion

For the reasons explained above, we dismiss Frank's complaints addressing David's possession, conservatorship, and access as moot. We overrule Frank's sole issue challenging the trial court's subject-matter jurisdiction to sign the Order modifying the remaining provisions in the Agreed Decree.

AFFIRMED IN PART AND DISMISSED AS MOOT IN PART.

HOLLIS HORTON
Justice

Submitted on February 2, 2024
Opinion Delivered March 14, 2024

Before Golemon, C.J., Horton and Johnson, JJ.

---

[41]Tex. Fam. Code Ann. § 152.102(2); *see* Miss. Code Ann. § 93-27-102(b).

[42]*Harper*, 562 S.W.3d at 6.