In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-25-00010-CV

FORT APACHE ENERGY, INC., ET AL., Appellants

V.

SHORT OG III, LTD., ET AL., Appellees

On Appeal from the 1A District Court
Tyler County, Texas
Trial Cause No. 27,291

## MEMORANDUM OPINION

In this accelerated interlocutory appeal, the defendants Fort Apache Energy, Inc., Allan P. Bloxsom, III, Allan P. Bloxsom, III as Trustee of the Bloxsom Children's Trust & Truett Tristen Children's Trust, Belinda Bloxsom, C&S Energy & Ventures LLC, Southern Star Exploration, LLC, Ann Schuhardt Oil and Gas, LLC, APB Oil, LLC, Fort Apache Energy Ventures 2002, Inc., Gold Fork Ranch, Lavanco Energy, Ltd., McBee Operating Company, LLC, Schuhardt Consulting Profit Sharing Plan, Schuhardt Profit Sharing Plan, Stormy Night Ranch, Vecta Oil

& Gas, Ltd., Verdad Oil & Gas Corporation, Geoffery Reed Pike, Bill Sjolander, Dale Batman, Crone Capital Investments Inc. (wrongfully named as Crown Investments Inc., George Brazzel, Joseph Dittmar as Trustee of the Joseph Dittman Revocable Trust, and Bite My Pipe, LLC (collectively the "defendants" or "Appellants") appeal the trial court's order denying their Motion to Dismiss under the Texas Citizens Participation Act (hereinafter "TCPA Motion"). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001-27.011 (the "TCPA"). Appellants filed their TCPA Motion wherein they requested a dismissal of claims filed against them by the plaintiffs Short OG III, Ltd., Short OG II, LLC, Short GP, LLC, Short Family, LTD, Short GP II, L.L.C., Short OG II, LTD, Short GP III, L.L.C., Short OG IV, LTD, Short GP IV, LLC, Bent Tree Courts 1, LTD, Bent Tree Courts GP 1, LLC, Michael F. Short, EB Reserve, LLC, and RL Reserve, LLC (collectively "plaintiffs" or "Appellees") pertaining to a lawsuit filed by Appellees in 2024 (the "2024 Lawsuit"). *See id.* § 27.003(a), 51.014(a)(12) (authorizing interlocutory appeal of an order denying a motion to dismiss filed under section 27.003 of the TCPA).[1] We affirm the trial court's denial of the TCPA Motion for the reasons explained below.

---

[1] The TCPA applies to "a legal action [that] is based on or is in response to a party's exercise of the right of free speech, right to petition, or right of association or arises from any act of that party in furtherance of the party's communication or conduct described by Section 27.010(b)[.]" Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a). The stated purpose of the TCPA "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and,

The 2022 Texas Uniform Fraudulent Transfer Act ("TUFTA")[2] Lawsuit

Two years before the Appellees filed the 2024 Lawsuit, Fort Apache Energy, Inc. filed a petition in Tyler County (the "TUFTA Lawsuit" or "TUFTA Petition") on behalf of its assignees (collectively the "TUFTA Claimants").[3] In the 2022 TUFTA Lawsuit, the TUFTA Claimants stated the following procedural history:

> [] This Original Petition stems from an underlying lawsuit involving disputed mineral interests in a 112.17-acre property located in Tyler County, Texas (the Property)[] styled as *Fort Apache Energy Inc., et al. v. Short OG, III, Ltd. et al.*, Civil Action No. 17-01252, and currently pending in the United States District Court for the Southern District of Texas. In 2011, Fort Apache discovered that ½ of the oil, gas, and minerals on the Property attributable to the Hrivnatz family was unleased. It was apparent from the early lease checks that the lease that purported to lease the Hrivnatz family's mineral interest (the Miller Lease) was fatally flawed. Fort Apache subsequently negotiated with the Hrivnatz family and obtained a valid lease (the Southern Star Lease). The underlying litigation arose following the working interest owner defendants' refusal to recognize Fort Apache's superior oil, gas, and mineral lease.
>
> [] On April 19, 2012, Fort Apache filed its Original Petition in Tyler County, Texas District Court. Substantial litigation occurred in this

---

at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002.

[2] *See* Tex. Bus. & Comm. Code Ann. §§ 24.001-.013; *see also Wirt v. LaBelleCo Fab, LLC*, No. 09-22-00099-CV, 2024 Tex. App. LEXIS 2377, at *30 (Tex. App.—Beaumont Apr. 4, 2024, no pet.) (mem. op.) (noting that the Texas Uniform Fraudulent Transfer Act "is intended to prevent debtors from defrauding creditors by moving assets out of reach[]").

[3] Many of the TUFTA Claimants are defendants in the 2024 Lawsuit, and some of the defendants listed in the TUFTA Lawsuit are plaintiffs in the 2024 Lawsuit.

state proceeding, which culminated with the Beaumont Court of Appeals reversing and remanding the state trial court's order granting the defendants' motions for summary judgment. This opinion, rendered on February 18, 2016, affirmed Ford Apache's right to pursue its claims under the Southern Star Lease, including claims for trespass to try title and equitable suit to quiet title.

[] On April 13, 2016, mere months after the Beaumont Court of Appeals' opinion was entered, one of the then-defendants filed for bankruptcy. This bankruptcy served as the basis for the defendants' joint removal of the state litigation and motion to transfer venue to the United States District Court for the Southern District of Texas, which was ultimately granted.[]

[] Once transferred, Fort Apache filed an Application for Preliminary Injunction on September 2, 2016[] to protect its property interest under the Southern Star Lease and filed its first federal complaint on October 24, 2016.[]

[] On June 7, 2019, the United States District Court for the Southern District of Texas rendered its Opinion on Superior Title, concluding, among other things, that the Miller Lease was void and that Fort Apache has superior title to the Hrivnatz mineral interest under the Southern Star Lease.[]

In the TUFTA Lawsuit, the TUFTA Claimants alleged in pertinent part that, through discovery in the underlying litigation, they discovered there were millions of dollars in intercompany transfers between Short OG III, Ltd. and its affiliates, as well as other improper payments made at the direction of Michael F. Short. According to the TUFTA Claimants, the transfers were made or obligations were incurred "for the express purpose of hindering, delaying or defrauding [the TUFTA Claimants] and/or were made or incurred without receiving reasonably equivalent value in exchange for each transfer or obligation[;]" and because of these transfers, payments, and debts

4

owed to the Short Affiliates, Short OG III, Ltd. became insolvent as of July or August 2017. The TUFTA Claimants also alleged that they had discovered that Fort Apache was engaged in settlement discussions with Sovereign Drilling, Ltd. while Short OG III, Ltd. was making substantial, covert, and improper payments to Sovereign Drilling, Ltd. to cover its legal fees, which created a conflict of interest for Sovereign Drilling, Ltd.'s counsel. The TUFTA Claimants alleged that Short OG III, Ltd., the Short affiliates, and Michael F. Short engaged in improper transfers of over $4 million that resulted in Short OG III, Ltd. becoming insolvent and violating the provisions of TUFTA. The TUFTA Lawsuit is still pending.[4]

---

[4] According to Appellants' TCPA Motion to Dismiss, the TUFTA Claimants filed the TUFTA Lawsuit in State Court after there was already a suit pending in federal court in cause number 25,891, in the Southern District of Texas (the "federal case"). The Appellants allege that the United States District Judge in the federal case ordered discovery compelling the TUFTA defendants to turn over financial records showing what transfers the TUFTA defendants made with funds the TUFTA Claimants were entitled to pursuant to the Opinion on Superior Title. The TCPA Moton to Dismiss alleges that the TUFTA Claimants, "along with a forensic accountant, analyzed the records that post-judgment discovery yielded and the findings from that discovery formed the basis for the TUFTA Petition." Appellants attached the federal court judge's Opinion on Superior Title as an exhibit to their TCPA Motion to Dismiss, and Appellants assert that their "victory resulted in settlement with other working interest owners[]" but the Appellees did not settle and instead retaliated against Appellants by filing the 2024 Lawsuit. According to the motion, two years after the TUFTA Claimants notified the United States District Court for the Southern District of Texas of the filing of the TUFTA Lawsuit to preserve the TUFTA Claimants' rights relative to the title dispute in federal court, Appellees filed the 2024 Lawsuit.

<u>The 2024 Lawsuit (the Underlying Lawsuit now on Appeal)</u>

On June 5, 2024, Appellees filed an Original Petition in the 2024 Lawsuit alleging that "Allan P. Bloxsom, Southern Star Exploration, and their co-conspirator Defendants and TUFTA Claimants sought to interfere with Plaintiffs['] business and business relationships by unlawfully leveraging their [TUFTA Lawsuit] pending in Tyler County to harm the Short Family's business dealings and extract concessions from the Short entities."[5] Appellees asserted claims for tortious interference, abuse of process, and civil conspiracy.

<u>Appellants' TCPA Motion to Dismiss</u>

On August 9, 2024, Appellants filed a TCPA Motion to Dismiss, requesting that the trial court dismiss Appellees' claims with prejudice, award Appellants court costs and reasonable attorney's fees incurred in defending against the action, and sanction Appellees to deter them from bringing similar actions in the future. According to Appellants, the Appellees' 2024 Lawsuit was filed in response to Appellants' right to petition, and therefore, the TCPA applies to the 2024 Lawsuit. Appellants argue that each of the causes of action in the 2024 Lawsuit is predicated on Appellants' "filing of the TUFTA Petition, the Notice of Filing, or both[]" and that, because each of those are legal documents filed in court, the filings "are

---

[5] We do not discuss the subsequently-filed First Amended Petition in this memorandum opinion because the TCPA motion to dismiss had already been overruled by operation of law when the First Amended Petition was filed.

communications in a judicial proceeding, or at a minimum in connection with an issue under consideration or review by a judicial body."

Appellants argue that the Appellees cannot establish a prima facie case for their claims in the 2024 Lawsuit. Appellants contend the Appellees cannot establish a tortious interference claim because they cannot show the first two elements—a valid contract and that the Appellants willfully and intentionally interfered with the contract. As for the Appellees' claim for abuse of process, Appellants argue that the Appellees cannot establish the first two elements: (1) the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process; and (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process. Appellants also contend that Appellees' claim for civil conspiracy fails because the underlying torts cannot be proven, and Appellees make no allegations of a concerted effort by Appellants to conspire to commit the alleged torts and none existed.

Appellants also argue that even if the Appellees produced clear and specific evidence of their claims, dismissal is proper because Appellants are entitled to judgment as a matter of law based on their affirmative defenses of judicial proceedings privilege and statute of limitations.

In support of their motion to dismiss, the Appellants attached several exhibits, including: Appellants' TUFTA Petition; Appellees' Original Answer and General

7

Denial in the TUFTA Lawsuit; a June 7, 2019 Opinion stating they have superior title in *In re Aztec Oil & Gas, Inc., et al.*, case number 4:17-CV-01252, in the United States District Court, Southern District of Texas ("the federal case"); a Transcript of Hearing Proceedings in the federal case; a Notice of Filing in the federal case; and a Declaration of Ryan E. Chapple.

Appellees' Response to Appellants' TCPA Motion to Dismiss

In the Response to Appellants' TCPA Motion to Dismiss, the Appellees argue that Appellants failed to establish the TCPA applies, Appellees' claims for fraud are explicitly exempt from the TCPA, Appellees' evidence "more than satisfies the evidentiary showing required by the TCPA[,]" and Appellants' defenses "are not proper at this juncture" and are not supported by the facts. According to the Appellees, the mere presence of a separate, previous lawsuit between the same parties does not mean that every subsequent legal action must be subjected to the TCPA's scrutiny, and Appellants failed to show that the TCPA applies. Appellees contend that, even if the TCPA applies, Appellants' claims are exempt from the TCPA under the fraud exemption in section 27.010(a)(12) of the Texas Civil Practice and Remedies Code because all the claims sound in fraud as evidenced by exhibits attached to the Response and the allegations in the 2024 Petition, and therefore, Appellees do not need to make a prima facie case. Appellees attached a

8

Declaration of Michael F. Short and numerous exhibits to his declaration.[6] Appellees contend that the attached exhibits support their arguments and show they have clear and specific evidence establishing a prima facie case for each element of their claims. Appellees also argue that their claims are not subject to the judicial-proceeding privilege, that the Appellants' TCPA Motion to Dismiss fails to establish any plausible claim to the privilege in reference to the facts and allegations in Appellees' 2024 Petition as required by law, and that no reasonable person could conclude from Appellees' 2024 Petition or Appellants' TCPA Motion to Dismiss that Appellees' claims are barred by limitations.

Appeal from the Denial of Appellant's TCPA Motion to Dismiss

Appellant's TCPA Motion to Dismiss was overruled by operation of law. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.005(a) (the TCPA generally provides that a motion to dismiss is overruled by operation of law if the trial court does not rule on the motion within thirty days following the date of the hearing on the TCPA motion to dismiss), 27.008(a) (providing for appeal by moving party if the trial court does not rule within thirty days following the hearing on the TCPA motion to dismiss). Appellants then filed this appeal.

---

[6] Appellants filed Objections to Appellees' TCPA Evidence and Motion to Exclude, but Appellants did not secure a ruling on the objections.

## Issues on Appeal

Appellants raise four issues on appeal. In their first issue, the Appellants argue that the TCPA applies because Appellees 2024 Lawsuit was filed against the Appellants in response to the Appellants' exercise of their right to petition (i.e., the 2022 TUFTA Lawsuit). In issue two, the Appellants contend that dismissal is required because the Appellees presented insufficient evidence to establish a prima facie case on any of the claims asserted in the 2024 Lawsuit. In their third issue, the Appellants argue that dismissal is required because they have proven their affirmative defenses to all claims in the 2024 Lawsuit. The Appellants contend in issue four that this Court should reverse and remand for assessment of Appellants' attorney's fees.

Appellees argue on appeal that the TCPA is not triggered just because there may be similar or overlapping facts in the 2022 TUFTA Lawsuit and the 2024 Lawsuit, and that the mere presence of a separate, previous lawsuit between the same parties does not mean that every subsequent legal action must be subjected to the TCPA's scrutiny. According to Appellees, even if Appellants establish that the TCPA applies, Appellees' claims pertain to fraud which falls within the TCPA's fraud exemption. Appellees argue that, even if the TCPA applies, Appellees established a prima facie case with clear and specific evidence as to each element of their claims.

TCPA Motion to Dismiss

Standard of Review

We review a trial court's denial of a TCPA motion to dismiss under a de novo standard of review. *See Walker v. Hartman*, 516 S.W.3d 71, 79-80 (Tex. App.—Beaumont 2017, pet. denied) (citation omitted); *see also Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018) (citations omitted). Our de novo review includes whether the parties met their burdens of proof under the TCPA and whether the nonmovant has presented clear and specific evidence establishing a prima facie case for each essential element of the challenged claims. *See Landry's, Inc. v. Animal Legal Defense Fund*, 631 S.W.3d 40, 45-46 (Tex. 2021). We consider the pleadings and affidavits stating the allegations upon which the claim or defense is based in the light most favorable to the nonmovant. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *In re Lipsky*, 460 S.W.3d 579, 586-87 (Tex. 2015) (orig. proceeding); *Push Start Indus., LLC v. Hous. Gulf Energy Corp.*, No. 09-19-00290-CV, 2020 Tex. App. LEXIS 9337, at *6 (Tex. App.—Beaumont Nov. 30, 2020, no pet.) (mem. op.) (citations omitted). We consider evidence a court could consider under Rule 166a of the Texas Rules of Civil Procedure. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a).

Burden of Proof Under the TCPA

The TCPA provides a three-step process courts must follow in deciding whether to dismiss a "legal action" to which the TCPA applies. *Montelongo v. Abrea*, 622 S.W.3d 290, 295-96 (Tex. 2021). Initially, the defendant who has moved to dismiss must show by a preponderance of the evidence that the plaintiff's claim is based on, relates to, or is in response to the movant's exercise of (1) the right of free speech, (2) the right to petition, or (3) the right of association. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam) (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)).

Next, if the defendant meets its burden, the burden shifts to the plaintiff to "'establish[] by clear and specific evidence a prima facie case for each essential element of the claim in question.'" *Id.* at 899 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c)); *Montelongo*, 622 S.W.3d at 296. If the plaintiff makes this showing, the court will dismiss the action if the defendant "establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d); *Montelongo*, 622 S.W.3d at 296.

In the last step of the analysis, we examine whether the defendants established that they are entitled to judgment as a matter of law on their affirmative defenses. *See Rogers v. Bryan*, No. 09-21-00338-CV, 2023 Tex. App. LEXIS 505, at *49 (Tex.

12

App.—Beaumont Jan. 26, 2023, no pet.) (mem. op.). When determining whether the movant under a TCPA motion to dismiss has met its burden under the third step, we apply a standard of review essentially equivalent to a motion for summary judgment on an affirmative defense. *See USA Today v. Ryan, LLC*, No. 09-22-00432-CV, 2024 Tex. App. LEXIS 3054, at *29 (Tex. App.—Beaumont May 2, 2024, pet. denied) (mem. op.) (citing *Rogers*, 2023 Tex. App. LEXIS 505, at *49).

A nonmovant can avoid the TCPA's burden-shifting requirements by showing an exemption applies. *See Callison v. C&C Pers., LLC*, No. 09-19-00014-CV, 2019 Tex. App LEXIS 5906, at *9 (Tex. App.—Beaumont July 11, 2019, pet. denied) (mem. op.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.010); *see also Round Table Physicians Grp., PLLC v. Kilgore*, 607 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2020, pet. denied); *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 470 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd). The nonmovant has the burden to prove by a preponderance of the evidence that the exemption applies. *Hieber v. Percheron Holdings, LLC*, 591 S.W.3d 208, 211 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *Forget About It, Inc. v. BioTE Med., LLC*, 585 S.W.3d 59, 68 (Tex. App.—Dallas 2019, pet. denied); *Schmidt v. Crawford*, 584 S.W.3d 640, 653 (Tex. App.—Houston [1st Dist.] 2019, no pet.). In evaluating whether claims are covered by an exemption, we must determine whether each individual cause of action falls within an exemption. *See Baylor Scott & White v. Project Rose MSO,*

13

*LLC*, 633 S.W.3d 263, 281-85 (Tex. App.—Tyler 2021, pet. denied) (claims for unjust enrichment, civil conspiracy, and aiding and abetting breach of fiduciary duty were exempt under the fraud exception as pleaded, but the claims for tortious interference with contract, promissory estoppel, quantum meruit, money had and received, and declaratory judgment as pleaded were not exempt).

When determining whether the nonmovant's claim is subject to the TCPA or should be dismissed under the TCPA, the court shall consider the pleadings, evidence a court could consider under Rule 166a of the Texas Rules of Civil Procedure, and any supporting and opposing affidavits stating the facts on which the liability or defense is based. Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a). The TCPA provides that if the trial court grants a TCPA motion to dismiss, it

> (1) shall award to the moving party court costs and reasonable attorney's fees incurred in defending against the legal action; and
> (2) may award to the moving party sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter.

*Id.* § 27.009(a).

Analysis

Our first task is to determine whether Appellees' claims as alleged in the 2024 Lawsuit are based on or in response to Appellants' exercise of the right to petition. The "exercise of the right to petition" includes "a communication in or pertaining to . . . a judicial proceeding[]" as well as "a communication in connection with an issue

14

under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding[.]" *See id.* § 27.001(4)(A)(i), (B). A "communication" is defined broadly as "the making or submitting of a statement or document in any form or medium[.]" *Id.* § 27.001(1). In reconciling these statutory definitions, the Texas Supreme Court concluded that "the TCPA applies to a legal action against a party that is based on, related to, or in response to the party's making or submitting of a statement or document in or pertaining to a judicial proceeding." *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). "[T]he ordinary meaning of a 'judicial proceeding' is an actual, pending judicial proceeding." *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 429 (Tex. App.—Dallas 2019, pet. denied).

We agree with Appellants that the Petition in the 2024 Lawsuit demonstrates that each of Appellees' claims is in response to the TUFTA Lawsuit. The first sentence of the Petition in the 2024 Lawsuit states: "This Original Petition stems from the conduct of the Defendant parties in leveraging their pending lawsuit in the 88th District Court for Tyler County to inflict damages against Plaintiffs' businesses and business relationships through unlawful and improper means." Appellees allege in their Petition in the 2024 Lawsuit, in pertinent part, that

> [] Allan P. Bloxsom, Southern Star Exploration, and their co-conspirator Defendants and TUFTA Claimants sought to interfere with [Appellees'] business and business relationships by unlawfully

15

leveraging their lawsuit pending in Tyler County to harm [Appellees]' business dealings and extract concessions from [Appellees].

. . .

[] Throughout the course of the first five years in the U.S. District Court, the TUFTA Claimants engaged in an ongoing discovery battle to gain intelligence on the [Appellees]' business structure and operations. Claimants learned that the [Appellees] had for decades engaged in a series of Section 1031 exchange transactions to reinvest profit from their real estate transactions to increase the value of their portfolio. On or about March 11, 2021, in the Southern District of Texas case, the TUFTA Claimants attempted to leverage [Appellees] by utilizing the acquired intelligence to amend their complaint to include their TUFTA allegations which are now pending in Tyler County. The federal court decisively rejected their attempt, striking the pleading in its entirety.

[] [Appellees] endeavored into a multi-step business plan in 2021, the first step of which was to refinance a $90,000,000 multifamily apartment community in Dallas to free up equity for reinvestment. The first attempted filing of the TUFTA claim caught the attention of [Appellee]'s lender when its due diligence revealed the TUFTA allegations.

[] Only because the claim had been summarily rejected by the Court; and [Appellee]'s attorneys' guidance on the lack of merit to those claims, was the loan ultimately approved.

[] On information and belief, after the failed effort to spoil the refinance deal sought by [Appellees], TUFTA Claimants silently filed those same claims in Tyler County on January 12, 2022, not only opening up another competing front in the parties' litigation, but without notifying the federal court or the named Defendants for six months.

[] Failing to notify the TUFTA Defendants and the federal court was no mistake. The TUFTA Claimants intended to knowingly and intentionally weaponize the pending allegations to cause injury and damages to the Short family business unrelated to the mineral interests in dispute in the Southern District of Texas. In June of 2022, the 1031 Exchange pursued by [Appellees] provided TUFTA Claimants another opportunity to do exactly that.

[] In December 2021, Short Family, LTD engaged its outside brokers and consultants to begin planning and negotiating the next phase of its multi-step plan.

16

[] By June of 2022[,] the planning and negotiation process successfully created a prospective deal. On June 6, 2022, the existing Short-family-owned 191-unit apartment community (the "Reserve") valued at $50,000,000 was posted for sale by Short Family, LTD's brokerage firm through multiple nation-wide outlets, some publicly available and some private. Its sale in a Section 1031 exchange would free up additional [] equity dollars generated by the rapid inflation of property values in the area.

[] On that same day, June 6, 2022, nearly six months since filing the TUFTA Petition, Fort Apache filed its "Notice of State Court Filing" in the Southern District of Texas; giving notice to [Appellees] of these claims for the very first time.

[] On information and belief, Fort Apache and Bloxsom intentionally withheld from attempting service or providing notice of the TUFTA Petition with the intent of waiting until the Petition could be disclosed to disrupt the diligence and diligence period for [Appellees] engaged in a business transaction.

[] The next step in the business plan had involved the 1031 exchange for a new 211-unit apartment community in the area (the "Audrey Transaction"), valued at more than $60,000,000, which could be refinanced following its lease-up to full occupancy, again freeing up equity dollars for reinvestment. Market conditions were ideal at the time, with the area enjoying rapid inflation in property values, high occupancy rates, and low interest rates on loans.

[] The following phase had been to increase the debt level on another owned property with elevated value and equity ratio generating enough total equity funds to enable Short Family, LTD to borrow at rates low enough to enable its purchase of a $100,000,000 property, significantly increasing the value of the Short family real estate portfolio.

[] Prior to receiving notice of the TUFTA Petition, the Audrey Transaction was all but a done deal. No Short Family-owned business had ever failed to close a transaction or failed to satisfy a prospective lender during a diligence period.

[] With interest in the sale of the Reserve property pouring in, Short Family, LTD executed a Letter of Intent on the Audrey property at a purchase price of $55,000,000.00 to a motivated seller on June 16, 2022. Also on June 16, 2022, Short received the results of a study made by its accountants on the failure to complete the acquisition. The consequences were catastrophic.

[] Short Family Ltd was advised contemporaneous with the results of their accounts study that it had made the winning bid on the contract to complete the Audrey Transaction.

[] The Short family realized the severity of the TUFTA Claimants litigation games. With a previously undisclosed claim for alleged TUFTA violations pending, there was no opportunity for the [Appellees] to survive a lender's due diligence.

[] With the transaction documents forthcoming for consideration and signature, the [Appellees] knew that if any of their contracts had to be cancelled or delayed prior to closing, the other would have to fail as well, with litigation virtually guaranteed to follow. Consequently, Short Family Ltd. was forced to withdraw both its offer to sell, and its offer to purchase to avoid further losses or harm to their business.

As to Appellees' tortious interference claim, in the Petition in the 2024 Lawsuit, they allege that at the time the TUFTA Claimants filed the TUFTA Lawsuit, the TUFTA Claimants were aware that the Appellees were involved in a real estate transaction or seeking to enter a real estate transaction, and that the TUFTA Claimants acted knowingly and intentionally through tortious and/or illegal conduct to interfere with Appellees' sale of the Reserve at Village Creek. As to the claim for an abuse of process, Appellees allege, among other things, that the TUFTA Claimants "made an illegal improper or perverted use of their TUFTA Petition to restrain, harm, and/or interfere with Plaintiffs' business operations that was neither warranted nor authorized by TUFTA Petition." With respect to Appellees' civil conspiracy claim, Appellees allege that claim is based on Appellants' conduct in "unlawfully leverag[ing] the TUFTA Petition to harm [Appellees'] business relationships and coerce [Appellees] to capitulate to [Appellants'] demands[;]" and Appellants'

18

"conceal[ing] the TUFTA Petition, or otherwise withhold[ing] service or notice of the TUFTA Petition, in order to harm, terminate or otherwise interfere" with Appellees' business relationships. Appellees also claim Appellants forged documents, including the Southern Star lease that was used to justify Appellants' "right to funds subject to the TUFTA Petition."

On this record, we conclude that the 2024 Lawsuit and Appellees' claims for tortious interference, abuse of process, and civil conspiracy asserted therein are based on or in response to the 2022 TUFTA Lawsuit that was pending at the time Appellees filed the 2024 Lawsuit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(4)(A)(i); *River Plantation Cmty. Improvement Ass'n v. River Plantation Props., LLC*, No. 09-17-00451-CV, 2018 Tex. App. LEXIS 7135, at *8 (Tex. App.—Beaumont Aug. 30, 2018, no pet.) (mem. op.) (allegations in the appellants' live pleadings demonstrate that they filed their claims for tortious interference in response to the appellee's suit for declaratory judgment). We also conclude that Appellants met their initial burden of showing by a preponderance of the evidence that the 2024 Lawsuit is "based on[, relates to,] or is in response to[]" the parties' exercise of the right to petition. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)(1)(B). Appellants met their initial burden to establish that the TCPA applies to the claims Appellees assert in the 2024 Lawsuit. Therefore, we sustain issue one.

<u>Does the Fraud Exemption Apply?</u>

That said, Appellees contend that in the 2024 Lawsuit they allege claims which are outside the scope of the TCPA because each of their claims falls under the TCPA's fraud exemption. Therefore, we must determine whether the fraud exemption applies. *See id.* § 27.010(a)(12).[7] If the fraud exemption applies to the claims asserted by the Appellees in the 2024 Lawsuit, we must affirm the trial court.

Section 27.010 of the TCPA lists certain exemptions. *Id*. If an action falls under one of the codified exemptions, the TCPA does not apply and may not be used to dismiss the action. *See id.*; *State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018). One subdivision of the TCPA provides in relevant part that the TCPA does not apply to "a legal action based on a common law fraud claim[.]" Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(12). A claim is "based on" a common law fraud claim if the claim requires proof of common law fraud as part of its elements. *See Union Pac. R.R. Co. v. Dorsey*, 651 S.W.3d 692, 700-01 (Tex. App.—Houston [14th Dist.] 2022, no pet.); *see, e.g.*, *Baylor Scott & White*, 633 S.W.3d at 281-85 (claims for unjust enrichment, civil conspiracy, and aiding and abetting breach of fiduciary duty were exempt under the fraud exception as pleaded). The elements of common-

---

[7] *But see* Tex. Civ. Prac. & Rem. Code Ann. § 27.010(b), (c). Section 27.010(b) lists three types of matters to which the TCPA does apply, "[n]otwithstanding [the provisions of] []sections [27.010](a)(2), (7), or (12)," and section 27.010(c) lists certain matters to which the TCPA does apply. *See id.* Sections 27.010(b) and (c) are not at issue here.

law fraud are: (1) the defendant made a material misrepresentation; (2) that the defendant knew was false or was made recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the misrepresentation; and (4) the plaintiff actually and justifiably relied upon the misrepresentation and suffered injury as a result. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018); *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015). The party raising the exemption has the burden to prove the exemption applies. *See Callison*, 2019 Tex. App. LEXIS 5906, at *9; *see also Hieber*, 591 S.W.3d at 211; *Forget About It, Inc.*, 585 S.W.3d at 68; *Schmidt*, 584 S.W.3d at 653. To determine whether Appellees met their burden, we look to the pleadings and evidence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *Jones-Hospod v. Maples*, No. 03-20-00407-CV, 2021 Tex. App. LEXIS 7285, at **9-10 (Tex. App.—Austin Aug. 31, 2021, pet. denied) (mem. op.). "[T]he factual allegations contained in the pleadings may alone be sufficient to demonstrate that the nature of the claims is such that the claims are statutorily exempt without need of additional proof." *See Gaskamp*, 596 S.W.3d at 480.

Appellants contend that the fraud exemption does not apply because the Appellees failed "to plead a common law fraud claim" which they contend "is fatal." Appellants cite to *Human Power of N Company v. Turturro*, No. 03-24-00305-CV, 2024 Tex. App. LEXIS 7791 (Tex. App.—Austin Nov. 1, 2024, no pet.) (mem. op),

21

and *Kinder Morgan SACROC, LP v. Scurry County*, No. 11-20-00009-CV, 2021 Tex. App. LEXIS 6821 (Tex. App.—Eastland Aug. 19, 2021, no pet.) (mem. op.), in support of this argument.

In *Turturro*, Human Power of N Company ("Human Power") filed a TCPA motion to dismiss Turturro's counterclaims for malicious prosecution and abuse of process. 2024 Tex. App. LEXIS 7791, at *1. Turturro argued that his counterclaims were exempt from the TCPA because they were in *response* to Human Power's claims which fall under two exemptions, one of which was the fraud exemption. *See id.* at **7-8. In reversing the trial court's denial of the TCPA motion, the Austin Court of Appeals concluded that Turturro could not "piggyback his counterclaims" on Human Power's claims to invoke the statutory exemption, and the Court determined that neither Turturro's abuse-of-process claim nor his malicious-prosecution claim, nor the facts he alleged in support of those claims, satisfied the exemptions upon which he relied. *Id.* at **8-9.

In *Kinder Morgan*, the taxing units filed a challenge with the Scurry County Appraisal Review Board based on the exclusion of Kinder Morgan's mineral interests from the appraisal records for the 2019 tax year. 2021 Tex. App. LEXIS 6821, at *1. The taxing units asserted their claims were exempt from the TCPA under the fraud exemption and the trial court denied Kinder Morgan's TCPA motion to dismiss on that basis. *Id.* at **1-2, **4-5, *7. The Eastland Court of Appeals noted

that the taxing units had conceded that their only viable legal remedies were afforded to them under the Tax Code and that they had not asserted any other independent cause of action against Kinder Morgan, and therefore, the only issue before the Court was whether the taxing units' statutory claim against Kinder Morgan was "based on" a common law fraud "claim." *Id.* at \*\*7-9. In reversing the trial court's order, the Eastland Court determined that the taxing units failed to demonstrate that the fraud exemption applied to their statutory claim:

> In their petition filed in the trial court, the Taxing Units pursued the only legal remedy available to them—a suit under the Tax Code for a determination that Kinder Morgan's mineral interests had been excluded or omitted from the appraisal records and to have Kinder Morgan's mineral interests reappraised. Here, the Taxing Units may be required to prove taxpayer fraud in order to prevail on their statutory claims. However, the specified basis of the existing right or legal remedy as demanded or asserted by the Taxing Units is the Tax Code's statutory scheme, not common law fraud. The legislature exempted from the scope of the TCPA "legal actions" that are based on a common law fraud claim, not legal actions based on a statutory right that, as a factual predicate to a statutory remedy, require a showing of fraudulent conduct. Because the Taxing Units' "legal action" is not "based on a common law fraud claim," the trial court erred when it . . . denied Kinder Morgan's TCPA motion to dismiss.

*Id.* at \*\*12-14 (internal citations omitted).

Despite Appellants' suggestion otherwise, we conclude that neither the *Turturro* decision nor the *Kinder Morgan* decision supports their argument in this case. The application of the fraud exemption does not turn on whether the nonmovant made a common law fraud claim. In fact, in other cases in which the

23

nonmovant made no claim for common law fraud, our sister courts have determined that the fraud exemption still applied to the derivative claims because the claim required proof of common law fraud as part of the elements of the claim. For example, in *Gentry Beach & Highground Inv. Vehicle, LLC v. Becker*, the nonmovant did not bring a common law fraud claim. *See* No. 05-22-00224-CV, 2023 Tex. App. LEXIS 1030, at *1 (Tex. App.—Dallas Feb. 16, 2023, no pet.) (mem. op.). The Dallas Court of Appeals concluded that, even assuming the TCPA movant met the step-one burden, the TCPA did not apply because, as to the nonmovant's fraudulent inducement claim, the claim was specifically exempted under the fraud exemption to the TCPA:

> [W]ith respect to the fraudulent inducement claim, the TCPA provides that it does not apply to "a legal action based on a common law fraud claim." Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(12). Fraudulent inducement is a "species" of common law fraud that shares the same basic elements. *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). Causes of action that require proof of common law fraud as part of their elements are "based on a common law fraud claim" and thus are exempt from the TCPA's reach. *See Baylor Scott & White*[,] 633 S.W.3d [at] 282[].

*Id.* at **6-7. As another example, in *Odic v. Gleghorn*, Odic, the TCPA non-movant, did not assert a common law fraud claim. *See* No. 12-24-00259-CV, 2025 Tex. App. LEXIS 4865, at *4 (Tex. App.—Tyler July 9, 2025, no pet.) (mem. op.). Even so, the Tyler Court of Appeals determined that Odic's claims for conspiracy,

24

conversion, and unjust enrichment were exempt from the TCPA under the fraud exemption, and explained:[8]

> [B]ased on our review of the pleadings, Odic's cause of action for conspiracy and conversion, as well as her claim for unjust enrichment, each are based on these claims of conspiracy to commit common-law fraud, i.e., each set of allegations stems from the allegations that the Movants participated in the fraudulent drafting and execution of the 2018 Will. Thus, to the extent that any of these claims form the basis of any statement or action undertaken by the Movants during the probate proceedings because such claims are based on allegations of common-law-fraud, they are exempt from the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(12)[] (TCPA does not apply to "a legal action based on a common law fraud claim"); *Baylor Scott & White*, 633 S.W.3d at 281-83 (TCPA fraud exemption includes causes of action based on common-law fraud, i.e., causes of action which require proof of common-law fraud as part of their elements, which, in that case, included civil conspiracy and equitable claim for unjust enrichment).

*Id.* at **12-13.

So, we must determine whether Appellees met their burden to prove the fraud exemption applies to their claims for tortious interference, abuse of process, and civil conspiracy. *See Callison*, 2019 Tex. App. LEXIS 5906, at *9; *see also Hieber*, 591 S.W.3d at 211; *Forget About It, Inc.*, 585 S.W.3d at 68; *Schmidt*, 584 S.W.3d at 653.

---

[8] Odic also made a claim for statutory fraud under the Texas Uniform Transfer Act, and the Tyler Court of Appeals concluded that the TCPA applied to that cause of action because it was a statutory fraud claim which was alleged to have occurred during the pendency of the probate proceedings at issue. *Odic v. Gleghorn*, No. 12-24-00259-CV, 2025 Tex. App. LEXIS 4865, at *13 (Tex. App.—Tyler July 9, 2025, no pet.) (mem. op.).

As explained above, the factual allegations in the pleadings may alone be sufficient to show that the claims are exempt. *See Gaskamp*, 596 S.W.3d at 470.

Appellees' Petition in the 2024 Lawsuit includes, in addition to the other allegations already noted, the following allegations:

> [] On information and belief, Bloxom, Southern Star, and their conspirators acquired that lease through forgery and fraud and no legitimate Southern Star Lease does, or ever existed.
> [] Instead of one coherent document, the purported "Southern Star Lease" is made up of at least nine separate documents.[] Sworn testimony from 2016 - 2017 establishes that Bloxsom, Southern Star, Fort Apache, and their conspirators forged signatures, dates, and falsely verified and notarized documents included in the lease. This included at least the following:
> > a. Backdating the Southern Star Lease to January 13, 2012.
> > b. Procuring the signatures on purported instruments of conveyance and powers of attorney of persons lacking, and known to be lacking, the requisite capacity and soundness of mind to manage their own financial and contractual affairs.
> > c. Forcibly signing Vannie Hrivnatz' name on documents.
> > d. False or improper notarization of documents.
> > e. Misrepresentations in County Records.
> > f. Destruction of relevant documents and contractor provisions.
> [] The availability of relief sought by the TUFTA Petition requires the Southern Star Lease to be valid, but intentionally presenting fraudulent documents as authentic and genuine to justify the claim to revenues from the mineral interests operates as a fraud against the Court and TUFTA Defendants that has caused damage to the Short Business Entities.

As for each of Appellees' claims, Appellees incorporated the allegations set forth in the Petition. In pleading their claim for tortious interference, Appellees asserted in the 2024 Lawsuit that the TUFTA Claimants acted knowingly and intentionally through tortious or illegal conduct to interfere with Appellees' sale of the Reserve at

26

Village Creek and with the Audrey Transaction, and that this tortious or illegal conduct proximately caused the collapse of Appellees' offering of the Reserve at Village Creek for sale and proximately caused the Audrey Transaction to collapse and caused Appellees to suffer damages as a result of the failed transactions. Regarding Appellees' abuse of process claim, Appellees alleged that the TUFTA Claimants "made an illegal improper or perverted use of their TUFTA Lawsuit to restrain, harm, and/or interfere" with Appellees' business operations and sought to disrupt the Audry Transaction and other real estate transactions through illegal, improper, or perverted use of the TUFTA Lawsuit resulting in Appellees' damages through the failure to facilitate certain transactions and purchases of real estate unrelated to claims in the TUFTA Lawsuit. As for Appellees' civil conspiracy claim, Appellees specifically alleged:

> [] Additionally, and/or alternatively, Defendants conduct constitutes civil conspiracy to commit fraud and civil conspiracy to unlawfully leverage the TUFTA Petition to harm Plaintiffs' business relationships and coerce Plaintiffs to capitulate to Defendants' demands.
> [] Bloxsom, Southern Star, and their conspirators acted intentionally and in concert or combination to conceal the TUFTA Petition, or otherwise withhold service or notice of the TUFTA Petition, in order to harm, terminate or otherwise interfere with Short Entities' existing and prospective business relationships.

We conclude that the allegations in the Petition demonstrate that each of Appellees' claims in the 2024 Lawsuit are based on, and require proof of, common law fraud. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.010(a)(12); *Dorsey*, 651

27

S.W.3d at 700-01; *Baylor Scott & White*, 633 S.W.3d at 281-85; *see also Gaskamp*, 596 S.W.3d at 470 (the factual allegations in the pleadings may alone be sufficient to show that the claims are exempt). Accordingly, we find that the fraud exemption applies to their claims against Appellants, and we overrule Appellants' second issue.

Having concluded that the fraud exemption applies, we need not address Appellants' third issue. *See Kilgore*, 607 S.W.3d at 883; *Gaskamp*, 596 S.W.3d at 470; *Callison*, 2019 Tex. App LEXIS 5906, at *9; *see also Best*, 562 S.W.3d at 11 (noting that if TCPA exemption applies, movant cannot invoke TCPA's protections). We overrule Appellants' fourth issue because the applicability of an exemption means that the TCPA, including its fee-shifting provision, does not apply, and as an unsuccessful movant, Appellants are not entitled to an award of attorney's fees or costs. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(1) ("if the court orders dismissal of a legal action under [Chapter 27], the court [] shall award to the moving party court costs and reasonable attorney's fees incurred in defending against the legal action[]"); *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016).

We affirm the trial court's denial of Appellants' motion to dismiss under the TCPA.

AFFIRMED.

LEANNE JOHNSON
Justice

Submitted on May 22, 2025
Opinion Delivered November 13, 2025

Before Johnson, Wright and Chambers, JJ.